MARY A. MILLER v. THE STATE.

No. 1311. Decided February 14, 1912.

**1.—Mingling Poison—Evidence—Bills of Exception.**

Where the bills of exception do not specify the particular portion of the testimony to which objections were urged, the same can not be considered.

**2.—Same—Evidence—Reputation of Prosecutor.**

While reputation as to prosecutor's veracity was admissible, the court should not have admitted testimony that he was a peaceable and law abiding citizen, under the record as it is presented.

**3.—Same—Evidence—Husband and Wife.**

Where the husband and wife were divorced, the husband should not have been permitted to testify as to confidential relations and communications that occurred during their marital relations.

**4.—Same—Evidence—Letters.**

Where the letters were not proven to have been written by the person whose name was attached thereto, the same could not be introduced in evidence, and a restriction as to their use does not cure the error.

**5.—Same—Charge of Court—Limiting Testimony.**

Where, upon trial of mixing strychnine with milk with intent to injure and kill prosecutor, the evidence showed that he drank none of the milk, but that his grandchild might have gotten some of the alleged poisonous mixture from the effects of which it died, the charge of the court should have properly limited this testimony, and it would have been better to have eliminated it altogether.

**6.—Same—Charge of Court—Burden of Proof.**

Where, upon trial of mingling poison with milk to injure and kill the prosecutor, the evidence showed that it was more than doubtful that defendant had anything to do with the matter of mingling the poison, the court should have submitted defendant's special instruction that the burden of proof is always on the State and never shifts to the defendant.

**7.—Same—Evidence—Extraneous Matter.**

Where, upon trial of mingling poison with milk to injure and kill the prosecutor, it was permissible to show that the defendant had opportunity to mingle the poison, it was not permissible to permit the witness to testify that he had arrested the defendant for theft and searched the premises for the alleged stolen property.

Appeal from the District Court of Swisher. Tried below before the Hon. L. S. Kinder.

Appeal from a conviction of mingling poison with drink to injure and kill the prosecutor; penalty, four years imprisonment in the penitentiary.

From the brief of counsel the following statement is found to be substantially correct: That the testimony showed that the prosecutor (defendant's divorced husband), who testified against defendant, was not injured; that he did not occupy the house exclusively where the poison, if any, was spread; that the house where the child died was occupied by the son of prosecutor; that it had been so occupied for nearly six months; that three or four days before the death of the child, prosecutor's son, who was the father of the child, and his family had gone on a tour in the country and that they returned on a Friday and that the child died that evening. Prosecutor testified that his wife, the defendant, knew where the poison was kept, though he did not state any specific time when it was put there; that on the day the child died the defendant was at that household, she saying that she went there to get a razor that belonged to her husband, the State contending that she had a motive for killing prosecutor and put out poison in the milk to kill him, but that by mistake the child got the poison instead of prosecutor. This statement in connection with the facts stated in opinion is sufficient.

*G. W. Smith* and *Randolph & Randolph* and *L. W. Dalton*, for appellant.—The husband is not a competent witness in a criminal charge against his wife, unless violence is committed on his person. Miller v. State, 37 Texas Crim. Rep., 575; Baxter v. State, 34 id., 516; Garnet v. State, 1 Texas Crim. App., 605.

On question of admitting letters without proving signature: Ex parte Denning, 50 Texas Crim. Rep., 629, 100 S. W. Rep., 401; Henry v. Vaughn, 103 id., 192; Pughe v. Coleman, 44 id., 576; 4 Enc. Ev., 831.

On question of admitting extraneous matter: Fore v. State, 5 Texas Crim. App., 251; Williamson v. State, 13 id., 514; Taylor v. State, 27 id., 463; Barkman v. State, 52 S. W. Rep., 69.

On question of admitting reputation of prosecutor as a peaceable and law abiding citizen: Zysman v. State, 60 S. W. Rep., 669; 3 Enc. Ev., pp. 20, 25.

On the court's refusal to submit charge on burden of proof: Mask v. State, 31 S. W. Rep., 408; Templeton v. State, 5 Texas Crim. App., 398.

As to question of limiting testimony of other offenses: Long v. State, 11 Texas Crim. App., 381; Carter v. State, 23 id., 508.

*C. E. Lane,* Assistant Attorney-General, and *L. C. Penry,* District Attorney, and *Martin & Zimmermann,* for the State.—The character witnesses were used by the State in rebuttal of defendant's theory that prosecutor had equal opportunity and a motive to put out the poison: Thomas v. State, 18 Texas Crim. App., 213; Long v. State, 17 id., 128; Morrison v. State, 40 S. W. Rep., 591; Payne v. State, 50 id., 363; Downing v. State, 61 Texas Crim. Rep., 519, 136 S. W. Rep., 471.

On question of admitting testimony of husband against wife: Rice v. State, 54 Texas Crim. Rep., 149, 112 S. W. Rep., 299; Murray v. State, 48 Texas Crim. Rep., 141, 86 S. W. Rep., 1024; 29 Am. & Eng. Enc. of Law, 637.

On question of admitting letters to show motive: Rice v. State, 54 Texas Crim. Rep., 149, 112 S. W. Rep., 299; Hall v. State, 21 id., 368; Pincord v. State, 13 Texas Crim. App., 468.

On the question of not limiting testimony: Leeper v. State, 14 S. W. Rep., 398; Alveraz v. State, 58 id., 1013; Hamblin v. State, 50 id., 1019; McKinney v. State, 8 Texas Crim. App., 626.

DAVIDSON, PRESIDING JUDGE.—The indictment contains three counts. The first charges appellant with mixing strychnine with milk with intent to kill John Miller; the second charges appellant by mixing said poison with milk did kill John Miller; the third charges appellant with mingling strychnine with a certain drink, to wit, milk with intent to injure and kill Wm. Miller. The court in his charge submitted only the third count.

1. The first six bills of exception relate to the introduction of evidence introduced by the State to show, first, the good reputation of Wm. Miller for truth and veracity, and, second, in regard to his good reputation as being a quiet, peaceable, law abiding man. These bills are not in compliance with the rules in that they are too general and do not specify the particular portions of the testimony to which objections were urged. The objections are general. Inasmuch as the case will be reversed upon other questions, we call attention to this condition of the record, and will say upon another trial we are of opinion the evidence which was admitted to sustain the reputation of Miller in regard to his being a peaceable, law abiding citizen under this record, should not be admitted. We are of opinion that

the court was right with reference to permitting the introduction of evidence in regard to his veracity. This is rather a close question, and in fact it may be very seriously questioned whether it should have been admitted, but as we understand this record there is no question in regard to the other phase of the testimony.

2. Another bill of exceptions was reserved to the introduction of quite a lot of testimony from the witness Miller, to which various objections were urged. Miller was the divorced husband of appellant at the time of the trial. He was permitted to testify to a great many things, among which were some confidential communications that occurred during their marital relations. We deem it unnecessary to enumerate them. The trial court will understand what they are and he should not permit them to go before the jury. This character of evidence it prohibited not only by public policy, but by the statute itself. Our authorities do not go to the extent of permitting the divorced husband or wife to be used as a witness against the other after their divorce as to matters of confidential communications. Confidential communications made between them during their marital relations are considered inviolable, and secrecy must be observed in regard to them. They can not be used under any circumstances as testimony.

3. The State was permitted through Miller to show the contents of certain letters he says were written to his wife by a party named John Nolan. He says he found these letters, and testified to their contents. Various objections were urged to this testimony which should have been sustained. The letters were not proven to have been written by Nolan otherwise than the fact that Miller said they were signed by Nolan, and even if the letters themselves had been offered in evidence, there would necessarily have been required evidence to establish the genuineness of the letters before they could be used. See Ex parte Denning, 50 Texas Crim. Rep., 629; Henry v. Vaughan, 103 S. W. Rep., 192. The court charged the jury in reference to these letters, and in regard to certain interrogatories and answers in the divorce proceedings, that they could not be considered for any purpose except the letters, interrogatories and answers which were permitted by the court as tending to show motive, if they did, and if considered by the jury at all, they should only be considered for that purpose and no other. The fact that the court limited and restricted the use of the letters as evidence does not cure the error in admitting the contents. Where erroneous evidence is admitted, that error can not be cured by a restriction to certain purposes in the charge.

4. It is further urged that error was committed by the court in failing to instruct the jury with reference to the effect of evidence introduced which tended to show that child may have gotten some of the alleged poisonous mixture from the effect of which it died. We

are led to believe that this evidence was admitted as part of the res gestae. Inasmuch as it was admitted it should have been limited, or the jury should have been informed in some way the office and mission of this testimony, it could not be used to show that appellant had placed the poison in the milk for the purpose of killing William Miller. The name of the child was John Miller. The evidence admitted, if of any cogency, was very weak and indirect, indicating that the child had gotten any of the alleged poisoned milk. The milk claimed to have been poisoned was old and "sour clabber." Right by the bucket containing this alleged poisoned milk was another bucket containing sweet milk. It was not poisoned as shown by the facts. There is no direct evidence that the child was ever given any of the milk. The testimony of Mark Miller is to the effect that a cup was sitting on the table with some of the sour clabber in it. This was supposed to have been taken from the bucket containing the sour and poisoned milk, but there is no evidence that the child ever drank it. If this testimony is admissible at all, it is only so if the defendant could be connected in any way upon facts showing that she put the poison in the milk, and that the child drank some of it. At the time the milk was said to have been poisoned Mark Miller and his wife, and their child, which subsequently died, were not at home and were not expected home until the following Sunday. The mingling of the poison with the milk occurred on the previous Friday. The testimony having gone before the jury, that body should have been instructed that they could not use it as a fact upon which to base a conviction of appellant for intending to poison William Miller. The writer does not see how this testimony could be admissible under the circumstances of this case in a future trial of the case inasmuch as the first two counts of indictment are eliminated.

5. Appellant wrote out special instructions to the effect that the burden of proof is always on the State and never shifts to the defendant. The charge is not here quoted. This is the substance. The court refused this charge. In this character of case this charge should be given. It is a very close, if not more than a doubtful case, on the evidence that appellant had anything to do with the matter, or mingled the poison with milk as charged, and in this connection the writer desires to say he does not believe the State has introduced sufficient evidence to show that she did. Upon another trial this charge should be given.

6. Bill No. 7 was reserved to the admission of evidence of the sheriff, substantially, that he had a search warrant for some property taken from the house of William Miller. The object of this search warrant was to investigate to see if Mrs. Miller, the appellant, had taken the property. It was a razor and shaving mug. He had also in his possession another warrant for her arrest under a charge of having stolen the mug and razor. It is further shown in the bill that Mrs. Miller admitted going to the house and getting the mug

and razor on the day it is claimed the poison was mingled with the milk. It is also shown that Mrs. Miller claimed the property right in the razor and shaving mug, her testimony showing that it belonged to her former husband. It is claimed by some of the testimony, to meet this, that she had given it to her then living husband, William Miller, and he had charged her with the theft of the property under these circumstances. It was not permissible to prove by the sheriff that he had gone there to and did arrest her for theft and search the premises for the alleged stolen property. This was subsequent to the time the poison was claimed to have been mingled with the milk, and could furnish no motive for the act of mingling the poison with the milk. It was an extraneous matter. It would be permissible to introduce her statement that she was at the house the day before for the purpose of getting this mug and razor. This would place her in position to be able to mingle the poison with the milk, and her admission of her presence there to get the razor and mug would be admissible to show her opportunity to do what the State claimed she did. The other matters were not admissible, and should have been rejected.

For the errors pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*